# EXHIBIT A

# MOTOR VEHICLE LEASE AGREEMENT
## NEW YORK

DATE 06/29/2012

**LINCOLN**
AUTOMOTIVE FINANCIAL SERVICES
www.LincolnAFS.com
1-888-493-6901

**LESSEE (and Co-Lessee) Name and Address (Including County and Zip Code)**
ALBERTO REYES JR
1936 HEMPSTEAD TPKE #296
EAST MEADOW NY 11554
NASSAU

**LESSOR (Name and Address)**
HASSETT LINCOLN MERCURY SALES
1530 SUNRISE HWY
WANTAGH NY 11793

"Finance Company" is LINCOLN AFS. The "Holder" is CAR EAST LLC and its assigns.
By signing "You" (Lessee and Co-Lessee) agree to lease this Vehicle according to the terms on the front and back of this lease and the terms of the Wear-Care Addendum, if any, attached to this lease.

If Your payment schedule is shown in Item 2(a), You entered into a "Monthly Payment Lease."
If Your payment schedule is shown in Item 2(b), You entered into an "Advance Payment Lease."

| New/Used | Mileage at Delivery | Year/Make/Model | Vehicle Identification Number | Vehicle Use |
|---|---|---|---|---|
| NEW | 29 | 2012 LINCOLN MKZ | 3LNHL2JCXCR826451 | PERSONAL |

You state that this Vehicle will be used primarily for:
[X] Personal, family or household use
[ ] Agricultural, business or commercial use

Lessee ___ N/A ___ Co-Lessee

WARNING: Important consumer protections may not apply if this agreement indicates You are leasing the Vehicle primarily for agricultural, business or commercial use.

| 1. Amount Due At Lease Signing or Delivery (Itemized Below) * | 2. Payments (a) Monthly Payments | 3. Other Charges (not part of Your monthly payment) | 4. Total of Payments (The amount You will have paid by the end of the lease) |
|---|---|---|---|
| | Your first monthly payment of $ 658.00 is due on 06/29/2012, followed by 35 payments of $ 658.00 due on the 29th day of each month. The total of Your monthly payments is $ 23688.00 | Disposition fee (if You do not purchase the Vehicle) $ N/A | |
| | (b) Advance Payment Your Payment of $ N/A is due on N/A The total of Your payment is $ N/A | N/A N/A | |
| $ 7724.31 | | Total $ N/A | $ 30754.31 |

### * Itemization of Amount Due at Lease Signing or Delivery

**5. Amounts Due At Lease Signing or Delivery:**

| | |
|---|---|
| a. Capitalized cost reduction | $ 4322.44 |
| b. First monthly payment | 658.00 |
| c. Advance payment | N/A |
| d. Refundable security deposit | N/A |
| e. Title fees | N/A |
| f. Registration fees | 234.00 |
| g. Acquisition fee | N/A |
| h. TAX ON CAP RED | 372.81 |
| i. UPFRONT TAXES | 2049.56 |
| j. WASTE TIRE FEE | 12.50 |
| k. N/A | N/A |
| l. N/A | N/A |
| m. OTHER CHARGES | 75.00 |
| **Total** | **$ 7724.31** |

**6. How the Amount Due At Lease Signing or Delivery will be paid:**

| | |
|---|---|
| a. Net trade-in allowance | $ N/A |
| b. Rebates and noncash credit | 6500.00 |
| c. Amount to be paid in cash | 1224.31 |
| d. N/A | N/A |
| **Total** | **$ 7724.31** |

**7. Your payment is determined as shown below:**

a. Gross capitalized cost. The agreed upon value of the Vehicle ($ 45258.78) and any items You pay over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance). (Itemized below - Item 19) ** ... $ 47438.78
b. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash that You pay that reduces the gross capitalized cost ... − 4322.44
c. Adjusted capitalized cost. The amount used in calculating Your base payment ... = 43116.34
d. Residual value. The value of the Vehicle at the end of the lease used in calculating Your base payment ... − 20892.50
e. Depreciation and any amortized amounts. The amounts charged for the Vehicle's decline in value through normal use and for other items paid over the lease term ... = 22223.84
f. Rent charge. The amount charged in addition to the depreciation and any amortized amounts ... + 1464.16
g. Total of base payments. The depreciation and any amortized amounts plus the rent charge ... = 23688.00
h. Lease payments. The number of payments in Your lease ... ÷ 36
i. Base payment ... = 658.00
j. Sales / Use tax ... + N/A
k. N/A ... + N/A
l. N/A ... + N/A
m. Total payment ... $ 658.00
n. Lease term in months ... 36

**Early Termination.** You may have to pay a substantial charge if You end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier You end the lease, the greater this charge is likely to be.

8. **Excess Wear and Use.** You may be charged for excessive wear based on our standards for normal use. At the scheduled end of this lease, unless You purchase the Vehicle, You must pay to Lessor $0.20 per mile for each mile in excess of 45029 miles shown on the odometer. See Items 28 and 29 on back and the WearCare Addendum, if any, attached to the lease for additional excess wear and use terms.

9. **Extra Mileage Option Credit.** At the scheduled end of this lease, You will receive a credit of $0. N/A per unused mile for the number of unused miles between N/A and N/A miles, less any amounts You owe under this lease. You will not receive any credit if the Vehicle is destroyed. If You terminate Your lease early, exercise any purchase option, are in default or the credit is less than $1.00.

10. **Purchase Option at End of Lease Term.** $ 21392.50 plus official fees and taxes, and a reasonable documentary fee if allowed by law, is Your lease end purchase option price. You have the option to purchase the Vehicle at the end of the lease term from a party designated by the Holder for the purchase option price if You are not in default.

11. **Other Important Terms.** See Your lease documents for additional information on early termination, purchase option and maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

**12. STATE DISCLOSURES** The following are descriptions of the GROSS CAPITALIZED COST and the ADJUSTED CAPITALIZED COST, disclosed above. GROSS CAPITALIZED COST is the sum of the ADJUSTED CAPITALIZED COST and any CAPITALIZED COST REDUCTION. The GROSS CAPITALIZED COST and the amount of the rental payment may be negotiable.
ADJUSTED CAPITALIZED COST is the amount which is capitalized in connection with the lease and is used in determining the amount of your periodic payment. This amount will be used in determining your early termination liability. The ADJUSTED CAPITALIZED COST may be used to compare the early termination provisions of competing lessors.

**13. WARRANTY** The Vehicle is covered by any warranty, extended warranty or service contract indicated below:

☐ Standard new vehicle warranty provided by the manufacturer or distributor of the Vehicle.

☒ FORD
N/A

**14. OFFICIAL FEES AND TAXES** $ 2928.87
The estimated total amount You will pay for official and license fees, registration, title and taxes over the term of Your lease, whether included with Your monthly payments or assessed otherwise. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the leased property at the time a fee or tax is assessed.

**15. VEHICLE INSURANCE MINIMUMS** You must insure the Vehicle during this lease. This insurance must be acceptable to Finance Company and protect You and Holder with (a) comprehensive fire and theft insurance with a maximum deductible amount of $1,000; and (b) collision and upset insurance with a maximum deductible of $1,000; and (c) automobile liability insurance with minimum limits for bodily injury or death of

$ 25000.00 for any one person and $ 50000.00 for any one accident, and $ 10000.00 for property damage. You will list the Holder as additional insured and loss payee under the insurance policy unless Lessor or Finance Company specifies otherwise. You must give Finance Company evidence of this insurance. (See Item 24 on back)

**THIS LEASE DOES NOT CONTAIN PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

**16. OPTIONAL INSURANCE** These coverages are not required to enter into this lease and will not be provided unless You sign below. If insurance is to be obtained by Lessor, the coverages are shown in a notice given to You this date and are for the term of this lease.

a. Credit Life Insurance $ N/A [Initial Coverage] $ N/A (Premium) N/A (Insured(s))
N/A
(Insurance Company)
Lessee: X N/A  Co-Lessee: X N/A

b. Credit Disability Insurance $ N/A [Monthly Coverage] $ N/A (Premium) N/A (Insured(s))
N/A
(Insurance Company)
Lessee: X N/A  Co-Lessee: X N/A

**17. LATE PAYMENTS** You will pay a late charge on each payment that is not received within 10 days after it is due. The charge is 7.5% of the full amount of the scheduled payment or $50.00 whichever is less.

**18. LESSOR SERVICES** NONE
(See Item 22 on back) NONE

**19. Itemization of Gross Capitalized Cost**

| Agreed Upon Value of the Vehicle | Sales/Use Tax and Other Applicable Taxes | Title Fees | License and Registration Fees | Extended Warranty and Service Contract | Acquisition Fee | Documentation Fee |
|---|---|---|---|---|---|---|
| $ 45258.78 | $ N/A | $ N/A | $ N/A | $ N/A | $ 645.00 | $ N/A |
| WEAR CARE | MAINTENANCE | N/A | N/A | N/A | N/A | Total Gross Capitalized Cost |
| $ 740.00 | $ 795.00 | $ N/A | $ N/A | $ N/A | $ N/A | $ 47438.78 |

**SIGNATURES AND IMPORTANT NOTICES**

Modification: This lease sets forth all of the agreements of Lessor and You for the lease of the Vehicle. There is no other agreement. Any change in this lease must be in writing and signed by You and Finance Company.

Lessee: _[signature]_  By: X ____  Title: ____

Co-Lessee: N/A  By: X N/A  Title: N/A

**YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO BE BOUND BY THE ARBITRATION PROVISION ON THE REVERSE SIDE OF THIS CONTRACT.**

**NOTICE TO THE LESSEE:** 1. Do not sign this agreement before You read it or if it contains any blank space.
2. You are entitled to a completely filled-in copy of this agreement when You sign it.

You acknowledge that You received a filled-in copy of this lease at the time You signed it and notice of an assignment of this lease by the Lessor to Holder.

**MOTOR VEHICLE LEASE AGREEMENT**

Lessee: _[signature]_  By: X ____  Title: ____

Co-Lessee: N/A  By: X N/A  Title: N/A

Lessor and Lessee are hereby notified that Holder has assigned to OI Exchange, in its capacity as Holder's qualified intermediary, its rights (but not its obligations) with respect to the purchase of this Vehicle and the sale of this Vehicle at lease termination.
Lessor accepts this lease and assigns it to Holder under the terms of the lease ply agreement between Lessor and Holder.

HASSETT LINCOLN MERCURY SALES
Lessor: ____  By: X _[signature]_  Title: _[signature]_

LI 19031-P (Aug 11)
LI 19031-APP
Previous editions may NOT be used.

SEE OTHER SIDE FOR ADDITIONAL AGREEMENTS

ORIGINAL
PLY 1 - ORIGINAL   PLY 2 - LESSEE   PLY 3 - CO-LESSEE/GUARANTOR COPY   PLY 4 - LESSOR

## VEHICLE MAINTENANCE, INSURANCE AND USE

**20. VEHICLE USE AND SUBLEASING** You will not use, or permit others to use the Vehicle (a) in violation of any law, (b) contrary to the provisions of any insurance policies covering the Vehicle, (c) outside the state where first titled or registered for more than 30 days without Finance Company's written consent, (d) outside the United States, except for less than 30 days in Canada or Mexico or (e) as a private or public carrier. You will keep this lease and Vehicle free of all liens and encumbrances. You will not assign or sublease any interest in the Vehicle or lease without Finance Company's written consent.

**21. IMPLIED WARRANTIES** If the Vehicle is of a type normally used for personal use and the Lessor, or the Vehicle's manufacturer, extends a written warranty or service contract covering the Vehicle within 90 days from the date of this lease, You get implied warranties of merchantability and fitness for a particular purpose covering the Vehicle. Otherwise, You understand and agree that there are no such implied warranties, except as otherwise required by law.

**22. VEHICLE MAINTENANCE AND OPERATING COSTS** Proper Vehicle maintenance is Your responsibility. You must maintain and service the Vehicle at Your own expense, using materials that meet the manufacturer's specifications. This includes following the owner's manual and maintenance schedule, documenting maintenance performed, and making all needed repairs. You are also responsible for all operating costs such as gas and oil. Lessor will provide the service(s), if any, identified in the Lessor Services section under the terms of a separate agreement. (See Lessor Services, item 18)

**23. COLLISION REPAIR** You are responsible for repairs of All Damage that is not a result of normal wear and use. These repairs include, but are not limited to, those necessary to return the Vehicle to its pre-accident condition, including repairs to Exterior Sheet Metal and Plastic Components, and to Vehicle Safety Systems, including air bag, seat belt and bumper system components. Replacement of Sheet Metal and all other repairs must be made with Original Equipment Manufacturer parts. Discuss this requirement with Your insurance company prior to authorizing any collision repair work.

**24. VEHICLE INSURANCE** You must insure the Vehicle and the Holder as set forth on the front of this lease under item 15, "Vehicle Insurance Minimums." If the state where You live requires the Vehicle establishes higher Vehicle Insurance Minimums than those listed on the front of this lease, You must insure the Vehicle and Holder at the amounts required by Your state. If You move to a state where Finance Company has established higher Vehicle Insurance Minimums than those listed on the front of this lease, You must insure the Vehicle and Holder for those higher amounts. These amounts are minimum requirements and may not be sufficient to protect Your assets. You should consult Your insurance advisor to determine if additional insurance coverage is right for You.

You agree that Finance Company can file a claim under the insurance policy. You authorize the insurance company to provide Finance Company any information Finance Company believes necessary to make a claim. You agree that Finance Company may receive and sign Your name on any checks or drafts received by Finance Company from Your insurance provider. In addition, You authorize Finance Company to settle or release any claim under the insurance related to Holder's ownership of the Vehicle. You also assign to Holder any other insurance proceeds related to this lease or Holder's interest in the Vehicle.

**25. RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES** This lease may contain charges for insurance, service contracts, or other contracts. You agree that Finance Company can claim benefits under these contracts. Unless prohibited by law, Finance Company may upon default or termination cancel these contracts to obtain refunds of unearned charges. You authorize Finance Company to subtract any refund from the amount You owe under this lease. If You receive a refund, You must pay the entire amount of the refund to Finance Company.

**26. RETURNED CHECK CHARGE** You agree to pay a returned check charge of $20 for each check, draft, or other order of payment that is dishonored for any reason.

## ENDING YOUR LEASE

**27. TERMINATION** This lease will terminate (end) upon (a) the end of the term of this lease, (b) the return of the Vehicle to Lessor, or another place designated by Finance Company, and (c) the payment by You of all amounts owed under this lease. Finance Company may cancel this lease if You default.

**28. RETURN OF VEHICLE** If You do not buy the Vehicle at lease end, You must return it to Lessor unless Finance Company specifies another place. Prior to the scheduled return of the Vehicle, You may be requested to present the Vehicle for inspection at a reasonable time and location. Upon return of the Vehicle, You must pay the disposition fee, if any, is shown on the front of the lease under item 3 "Other Charges." If You fail to return the Vehicle within 10 days after Your scheduled termination date, You will be charged one Monthly Payment and Your term will be extended one month. If You continue to fail to return the Vehicle You must pay damages to Finance Company, including amounts payable under default. Payment of these amounts will not allow You to keep the Vehicle.

**29. STANDARDS FOR EXCESS WEAR AND USE** You are responsible for all repairs to the Vehicle that are not the result of normal wear and use. These repairs include, but are not limited to those necessary to repair or replace: (a) Tires which are unmatched, unsafe or have less than 1/8 inch of remaining tread in any place; (b) Electrical or Mechanical defects or malfunctions; (c) Glass, Paint, Body Panels, Trim and Grill Work that are broken, mismatched, chipped, scratched, pitted, cracked, or if applicable, dented or rusted; (d) Interior rips, stains, burns or worn areas; (e) Replacement of any missing equipment or parts that were in or on the vehicle when delivered, including owner's manual; and (f) All Damage which would be covered by collision or comprehensive insurance whether or not such insurance is actually in force. Replacement of Sheet Metal and all other repairs must be made with Original Equipment Manufacturer parts. Your use or repair of the Vehicle must not invalidate any warranty. If You have not had the repairs made before the Vehicle is returned at the scheduled end of this lease, You will pay the estimated costs of such repairs, even if the repairs are not made prior to Holder's sale of the Vehicle.

**30. VOLUNTARY EARLY TERMINATION AND RETURN THE VEHICLE** You may terminate this lease early, if You are not in default and You satisfy Your early termination obligation. You must return the Vehicle to Lessor unless Finance Company designates another place and You must pay the following: (a) the amount by which the Unpaid Adjusted Capitalized Cost exceeds the Vehicle's Fair Market Wholesale Value, plus (b) all other amounts then due under the lease (except for excess wear and use and mileage). If You entered an *Advance Payment Lease* and the Vehicle's Fair Market Wholesale Value exceeds the Unpaid Adjusted Capitalized Cost, You will receive a credit for the difference.

Alternatively, You may choose to satisfy Your financial obligation under this section upon Vehicle return if You pay the following: (a) the unpaid remaining Monthly Payments, plus (b) any charges for excess wear and use and mileage, plus (c) all other amounts then due under the lease.

**EARLY TERMINATION MAY REQUIRE YOU TO PAY A SUBSTANTIAL CHARGE.**

**31. VOLUNTARY EARLY TERMINATION AND PURCHASE THE VEHICLE** You may purchase the Vehicle from the Lessor or a party designated by Finance Company at any time if You are not in default. If You have a *Monthly Payment Lease*, you must pay the following: (a) the Unpaid Adjusted Capitalized Cost, plus (b) the amount by which the lease end purchase option price (item 10) exceeds the Residual Value (item 7d), plus (c) official fees and taxes, plus (d) all other amounts then due under this lease (except charges for excess wear and use and mileage). You may also be charged a reasonable documentary fee if allowed by law. If You have an *Advance Payment Lease*, you must pay the following: (a) the lease end purchase option price (item 10) less (b) any unearned Rent Charges, plus (c) official fees and taxes, plus (d) all other amounts then due under this lease (except charges for excess wear and use and mileage). You may also be charged a reasonable documentary fee if allowed by law.

**32. DEFINITION OF TERMS**
Unpaid Adjusted Capitalized Cost If You have a *Monthly Payment Lease*, the Unpaid Adjusted Capitalized Cost is an amount that starts with the Adjusted Capitalized Cost and is reduced each month on the due date by the difference between the Base Monthly Payment and the part of the Rent Charge earned in that month on an actuarial basis.

If You have an *Advance Payment Lease*, the Unpaid Adjusted Capitalized Cost is an amount that starts with the Adjusted Capitalized Cost less the Base Payment. This amount is increased each month on the due date by the part of the Rent Charge earned in that month on an actuarial basis.

In both cases, rent charges are earned when due. Lessor or Finance Company will provide You with an explanation of the actuarial method upon request.

Fair Market Wholesale Value will be: (a) an amount agreed to by You and Lessor or Finance Company, or (b) the value which could be realized at the wholesale sale of the Vehicle, as determined by a professional appraisal obtained by You at Your expense within 10 days from termination from an independent third party agreeable to Finance Company, or (c) if not established by agreement or appraisal, the net amount received by Finance Company, Holder or its designated intermediary upon the sale of the Vehicle at wholesale or other commercially reasonable manner.

Monthly Payment If You have a *Monthly Payment Lease*, Monthly Payment is the Total Payment (item 7m). If You have an *Advance Payment Lease*, Monthly Payment is the Total Payment (item 7m) divided by the Lease Term in Months (item 7n).

Base Monthly Payment If You have a *Monthly Payment Lease*, Base Monthly Payment is the Base Payment (item 7f). If You have an *Advance Payment Lease*, Base Monthly Payment is the Base Payment (item 7f) divided by the Lease Term in Months (item 7n).

**33. CONTACT NUMBER FOR FINANCE COMPANY** Please contact Finance Company at the telephone number or website listed on the front of this lease if You have any questions regarding terminating Your lease or purchasing the Vehicle.

**34. YOUR ODOMETER OBLIGATIONS** Federal law requires You to complete a statement of the Vehicle's mileage at the end of this lease. You may be fined and/or imprisoned if You do not complete the disclosure or if you make a false statement.

If the odometer is at any time inoperative, You will provide us with reasonable evidence of the Vehicle's actual mileage at vehicle return. If You are unable to do so, You will pay us our estimate of any reduction of the Vehicle's wholesale value caused by the inability to determine the Vehicle's actual mileage.

## ADDITIONAL INFORMATION

**37. ASSIGNMENT AND ADMINISTRATION** When You and Lessor sign this lease, Lessor will assign it to Holder, Finance Company or a substitute will administer this lease. You must then pay, in U.S. funds, all amounts due under this lease to Finance Company. If Finance Company is not the Holder of this lease, Holder has appointed Finance Company as its agent. As agent for Holder, Finance Company has the power to act on Holder's behalf to administer, enforce, and defend this lease. If Lessor has agreed to repair or maintain the Vehicle, obtain any insurance or perform any other service, You will look only to the Lessor for those services.

**38. TAXES** You will promptly pay all fees, charges, and taxes relating to the lease or Vehicle (except for Lessor's or Holder's income taxes). You will pay these amounts even if they are assessed after lease end.

**39. TITLING** The Vehicle will be titled in the name of Holder. There may be a lienholder listed as well. You will register the Vehicle as directed by Finance Company. You will pay all license, title and registration costs.

**40. INDEMNITY** You will indemnify and hold harmless Lessor, Finance Company and Holder and their assigns from any loss or damage to the Vehicle and its contents and from all claims, losses, injuries, expenses and costs related to the use, maintenance, or condition of the Vehicle. You are responsible for promptly paying all fines and tickets, including parking tickets, imposed on the Vehicle or its driver. If both a Lessee and Co-Lessee signed this lease, each party is jointly and severally liable for the payment of those fines and tickets. If You do not pay, You will reimburse Finance Company and pay a $20 administration fee, unless prohibited by law, for every such fine, ticket, or penalty that must be paid on Your behalf.

**41. SECURITY DEPOSIT** Your security deposit may be used by Finance Company to pay all amounts that You fail to pay under this Lease. You will not receive any interest, profits or other earnings on Your security deposit(s).

**42. CONSUMER REPORTS** You authorize Finance Company and Holder to obtain consumer credit reports from consumer reporting agencies (credit bureaus) for any reason and at any time in connection with this lease.

**43. SERVICING AND COLLECTION** You agree that Lessor, Finance Company, Holder and their affiliates, agents and service providers may monitor and record telephone calls regarding your account to assure the quality of our service or for other reasons. You also expressly consent and agree that Lessor, Finance Company, Holder and their affiliates, agents and service providers may use written, electronic or verbal means to contact you. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems. You agree that Lessor, Finance Company, Holder and their affiliates, agents and service providers may use any email address or any telephone number you provide, now or in the future, including a number for a cellular phone or other wireless device, regardless of whether you incur charges as a result.

**44. GENERAL** Except as otherwise provided by the law of the state where You reside, the law that will apply to this lease is the law of the state where the Lessor's place of business is, as set forth on the front of the lease. If that law does not allow any of the agreements in this lease, the ones that are not allowed will be void. The rest of this lease will still be valid.

### READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIRETY
### ARBITRATION

Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either You or Lessor/Finance Company/Holder ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Such Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity of this clause, or arbitrability of any issue; 3) Claims between us and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to Your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

**RIGHTS YOU AND WE AGREE TO GIVE UP**
If either You or we choose to arbitrate a Claim, then You and we agree to waive the following rights:

- RIGHT TO A TRIAL, WHETHER BY A JUDGE OR JURY
- RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION
- BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT
- RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR
- OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT

**Rights You And We Do Not Give Up:** If a Claim is arbitrated, You and we will continue to have the following rights, without waiving this arbitration provision as to any Claim: 1) Right to file bankruptcy in court; 2) Right to enforce the ownership interest in the vehicle, whether by repossession or through a court of law; 3) Right to take legal action to enforce the arbitrator's decision; and 4) Right to request that a court of law review whether the arbitrator exceeded its authority.

You may choose the organization to conduct the arbitration subject to our approval. The applicable rules (the "Rules") may be obtained from the selected organization. If there is a conflict between the Rules and this contract, this contract shall govern. This contract is subject to the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and the Federal Rules of Evidence. The arbitration decision shall be in writing with a supporting opinion. Judgement upon the award rendered by the arbitrator may be entered in any court having jurisdiction. We will pay Your total reasonable arbitration fees and expenses (not including attorney fees, except where applicable law otherwise provides) in excess of $125. We will pay the whole filing fee if we demand arbitration first. Any portion of this arbitration clause that is unenforceable shall be severed, and the remaining provisions shall be enforced. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable. Not withstanding any other provision of this Arbitration clause, the validity and scope of the waiver of class action rights shall be decided by the court and not by the arbitrator.

U 15031-P (Aug 11)
U 19031-APP
Previous editions may NOT be used

NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION